IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DAVID EUGENE BOWMAN                                                           PLAINTIFF

v.                                                    CIVIL ACTION NO. 1:21-cv-00121-TBM-RPM

THE MCDONNELL LAW FIRM, P.A.
AND METLIFE LEGAL PLANS, INC.,
f/k/a HYATT LEGAL PLANS, INC.                                                 DEFENDANTS

## REPLY IN SUPPORT OF MOTION TO REMAND

David Eugene Bowman ("Bowman" or "Plaintiff") presents his Reply in Support of Motion to Remand under 28 U.S.C. § 1147(c), as follows:

### INTRODUCTION

Under *Dalvia*, this Court should remand this case to state court. Plaintiff's claims concern the quality of the legal services provided by MetLife's plan attorney and do not require interpretation of MetLife's legal plan. MetLife's legal plan fails to articulate any standard for determining the competency of its attorneys. The standard for making a non-negligent referral to an attorney is therefore defined by state law. MetLife's legal plan does not conflict with state law or otherwise attempt to establish any guidelines for referral to competent attorneys. In addition, MetLife has failed to establish that the legal plan falls outside ERISA's safe harbor. MetLife simply cites to a contract that sets forth ministerial tasks to be performed by Meritor. MetLife has produced no evidence that Meritor in fact endorsed the legal services plan or that a reasonable employee would believe that Meritor remained anything but neutral as to MetLife's legal services plan. Accordingly, Plaintiff respectfully requests that this Court grant his Motion to Remand.

**I.    UNDER *DALVIA*, COMPLETE PREEMPTION FAILS TO EXIST.**

Contrary to MetLife's arguments, Plaintiff's Complaint against MetLife has always been

about the quality of the legal services provided to him by MetLife's plan attorney, and Plaintiff's claims do not require interpretation of the legal plan.  MetLife provided Plaintiff with an attorney who provided Plaintiff with an antenuptial agreement.  No one would seek referral to an incompetent attorney.  *See Dukes*, 57 F.3d at 359 ("[W]e hasten to add that while we have no doubt that all concerned expected the medical services arranged for by the HMOs to be of acceptable quality, this seems to us beside the point.").  The point is that Plaintiff received the benefit of a referral to an attorney, and based on MetLife's representations, Plaintiff believed his legal needs were placed in competent hands.  Yet, MetLife is incorrect when it baldly proclaims that Plaintiff must interpret the legal services plan itself to prove its case.  Plaintiff has not sued MetLife for failing to provide him with an attorney.  He has sued as to the quality of the benefits received (i.e., a competent attorney), and MetLife has failed to establish that the legal services plan articulates any particular standard, procedure, or criteria for providing those benefits.

In *Aetna Health Inc. v. Davila*, 542 U.S. 200, 2010 (2004), the U.S. Supreme Court established a two-part test for determining when state law claims are completely preempted by § 502(a). Under *Davila*, state law claims are completely preempted when (1) "an individual, at some point in time, could have brought the claim" under § 502(a), and (2) "there is no other independent legal duty implicated by a defendant's actions." *Id*.

MetLife states in its Response, "Claims such as those asserted by Plaintiff based on purported representations regarding plan benefits relate to and necessarily involve a review of the subject plan."  Yet, MetLife simultanesoulsy provides no written selection criteria for the attorneys within the legal plan that would require plan interpretation.  The issue before this Court is simply whether ERISA preempts Plaintiff's state law action against MetLife where the legal plan fails to articulate any standard whatsoever for the competency of the attorney under the plan

and requires no interpretation of the plan.  The legal plan simply does not attempt to displace state law as to the competency of attorneys.  *See, e.g., Dukes*, 57 F.3d at 359  ("The relevant inquiry is not whether there was an expectation of acceptably competent services, but rather whether there was an agreement to displace the quality standard found in the otherwise applicable law with a contract standard.").  MetLife has failed to establish that Plaintiff's claims require plan interpretation or that Plaintiff had a remedy for his state law claims when his claims accrued.   MetLife's arguments are wholly conclusory in this respect.

Attempting to distinguish *Dukes,* MetLife latches on to dicta that actually support removal under the present facts:

> We also recognize the possibility that an ERISA plan may describe a benefit in terms that can accurately be described as related to the quality of the service. Thus, for example, a plan might promise that all X-rays would be analyzed by radiologists with a prescribed level of advanced training. A plan participant whose X-ray was analyzed by a physician with less than the prescribed training might well be entitled to enforce the plan's promise through a suit under § 502(a)(1)(B) to secure a denied benefit.

*See* Doc. #17 at p. 5 (citing *Dukes*, 57 F.3d at 358). While MetLife's legal plan obviously provides for referral for an attorney and Bowman would not have participated in the legal plan without the plan's existence, these broad realities fail to carry the day for MetLife.  The legal plan itself fails to address how MetLife determines the competency of the attorneys to which it refers participants under the legal plan.  In contrast, the possible scenario described above envisions a plan explicitly articulating a level of advanced training or prescribed training for the x-ray technician.  The MetLife legal plan does not do so nor could it.  To practice law, every attorney has a bar license, but that bar license does not mean that he or she is competent to handle every legal manner.  In making the referral for a particular legal need, MetLife necessarily assumes obligations not spelled out in the plan, including finding not only a licensed attorney but also one with the experience capable of handling the particular legal issue.

MetLife's duties in doing so properly are not spelled out in the legal plan and, therefore, arise from and are controlled by state tort law. Stated otherwise, Plaintiff's claims will not benefit by looking back to a legal plan that fails to articulate any standard whatsoever as to how MetLife determined the competency of the plan attorneys. There is nothing to see in the plan itself about how MetLife made these decisions. MetLife simply glosses over this fact.

MetLife cites *Hall v. Blue Cross/Blue Shield of Alabama*, 134 F.3d 1063, 1064 (11th Cir. 1998). *Hall*, however, shows that preemption fails to exist under the instant facts. There, the Plaintiff had surgery and incurred over $10,000 in medical expenses. She then filed suit alleging that agents of Blue Cross fraudulently induced her to enroll in its plan based on material misrepresentations about the scope of insurance coverage for preexisting conditions. The Eleventh Circuit found complete preemption because the Plaintiff would have to look back to the plan to establish her fraud claim. In *Hall*, the plan actually spelled out a scope for the insurance coverage. In the instant case, there are no standards for referral to attorneys.

Notably, MetLife also fails to speak as to the practical effects of allowing MetLife to refer attorneys to plan participants without any recourse against MetLife due to ERISA safeguards. Congress did not envision MetLife being able to refer attorneys to plan participants without plan participants having any meaningful recourse due to MetLife's negligent referral. "As the Supreme Court has made clear, ERISA's principal goal 'is to protect plan participants,' not plan sponsors." *Greenbrier Hotel Corp. v. UNITE HERE HEALTH*, 719 F. App'x 168, 178 (4th Cir. 2018) (citing *Gobeille v. Liberty Mut. Ins. Co.*, ⎯⎯ U.S. ⎯⎯, 136 S. Ct. 936, 946, (2016) (quoting *Boggs v. Boggs*, 520 U.S. 833, 845 (1997)); ERISA § 2, 29 U.S.C. § 1001 (congressional findings and declaration of policy)). It is one thing for Congress to prevent the states from disallowing legal plans to exist as whole or prescribing whether the legal plans are

required to be open or closed legal plans, for instance.  It is another thing to disallow state tort law to govern the negligent referral of attorneys to plan participants where the legal plan itself does not set forth any standards for ascertaining the competency of the attorneys.  Preemption in this case helps protect plan sponsors and damages plan participants.

As for a remedy under ERISA, in any negligent misrepresentation claim, there has to be reasonable reliance and damages before a remedy can even be sought.  If the plan participant relies on the representations (i.e., the referral) of MetLife and is injured, the plan participant has no remedy against MetLife if ERISA preempts his state law claims.  MetLife itself recognizes this fact when it states, Plaintiff's claims "are all based on promises regarding plan benefits allegedly made and broken before the subject legal services were provided."  The referral has already been performed negligently and the damages have been incurred as a proximate result of MetLife's negligence, resulting in a state law claim for which the plan participant has no legal remedy under ERISA against MetLife.  No Plaintiff can travel back in time to get a redo on the referral.  Contrary to MetLife's conclusory argument that a remedy exists under ERISA, the second prong of *Dalvia* test is met.  Plaintiff has no remedy under ERISA.

Finally, MetLife relies on *Winkler* and *In re Estate of Frappier*, which address conflict preemption under Section 502, while MetLife simultaneously contends the conflict preemption is not relevant to the complete preemption analysis.  MetLife's reliance on the Order to Dismiss in *Winkler v. Hancock*, et al, Case No. 2018-CA-006581-O, from the Circuit Court of the Ninth Judicial Circuit in Orange County, Florida is misplaced.  In *Winkler*, the circuit court relied on *In re Estate of Frappier*, 678 So. 2d 884 (Fla. 4th DCA 1996) to find the claims against Hyatt to be preempted under ERISA Section 514(a) because the beneficiary had not received a quantum of

benefits (i.e., a competent attorney). *In re Estate of Frappier* Court's interpretation of *Dukes*, 57 F.3d at 361, is errant. In *Dukes*, the Third Circuit specifically stated,

> We will assume, without deciding, that the medical care provided (and not merely the plaintiffs' memberships in the respective HMOs) is the plan benefit for the purposes of ERISA. We will also assume that the HMOs, either as a part of or on behalf of the ERISA plans, <u>arrange for the delivery of those plan benefits</u>.

The *Dukes* Court found that "arrang[ing] for the delivery of those plan benefits" included selection of the providers to perform the medical treatment. Dukes's Complaint, for instance, alleged a claim based on the failure to select competent providers, which was assumed to be a plan benefit. *See Dukes v. U.S. Healthcare, Inc.*, 848 F. Supp. 39, 40 (E.D. Pa. 1994) (overruled) (Dukes "alleges certain negligent acts on the part of USHC including the failure to exercise reasonable care in selecting, retaining, screening, monitoring, and evaluating the other defendants."). On appeal, the Third Circuit reversed, holding that both the direct negligence and the agency claim were not preempted as they related to the quality of the care, which necessarily includes selection of the provider. The *Dukes* Court held this way despite assuming, without deciding, that the provision of medical care and its arrangement was the plan benefit and ultimately found that these claims did not fall under Section 502 for purposes of complete preemption. This Court should rule the same here for purposes of complete preemption. Plaintiff's claims relate to the quality of benefit provided, not interpretation of the legal plan. As stated, MetLife's legal plan does not set forth any criteria to be interpreted.

Because both *Dalvia* prongs are satisfied, this Court should grant Plaintiff's Motion to Remand.[1]

**II.     THE SAFE HARBOR APPLIES TO THE METLIFE LEGAL PLAN.**

---

[1] As conflict preemption is not relevant to complete preemption, Plaintiff simply incorporates by reference the argument and authority in its Memorandum in Support of Opposition to MetLife's Motion to Dismiss, which address conflict preemption and establish why it does not apply in the instant case.

6

MetLife continues to rely on a contract between Meritor and MetLife Legal Plans to establish that Meritor played an active role in or endorsed the legal services plan. However, MetLife has failed to provide any evidence that Meritor in fact undertook to perform any of the alleged obligations in the contract. Simply because parties state obligations in contract does not mean that they performed them as written. There are entire bodies of law on modifications of contracts through performance. This is precisely why Plaintiff has requested discovery in this case and Rule 56(f) Continuance.

Moreover, MetLife has failed to even allege how Meritor took an active role in determining employee eligibility. Did Meritor simply inform all employees and dependents that they were eligible? Or, did Meritor establish some criteria for eligibility, other than simply being employed. To ascertain the level of Meritor's involvement, Plaintiff has requested discovery. Without discovery, even MetLife is left making conclusory arguments about how much money Meritor incurred due to the plan. In arguing that Meritor endorsed the plan, MetLife states,

> [Meritor] would have incurred both print and employee costs to print and distribute plan descriptions and to distribute enrollment materials to its employees. This was not a situation where Meritor sat back and simply allowed MLP to perform these functions. Meritor agreed to take on the responsibility for same. It had skin in the game, so to speak.

This argument is wholly conclusory. MetLife has prevented to evidence to this Court that Meritor actually incurred any expenses or undertook any risks. MetLife has produced no pamphlets or in fact took any actions whereby a Meritor employee would reasonably believe that Meritor had ever endorsed MetLife's legal plan.

Even assuming *arguendo* that Meritor undertook the obligations stated in the contract provided by MetLife, the safe harbor exception still applies. As stated in Plaintiff's Memorandum in Support of Motion to Remand, MetLife has failed to establish that Meritor did

anything other than engage in ministerial tasks, including determining eligibility of plan participants. In *Ames v. Jefferson Pilot Fin. Co.*, 515 F. Supp. 2d 1050, 1057 (D. Ariz. 2007), the United States District Court for the District of Arizona rejected the Defendant's argument that the plan at issue fell outside the safe harbor, despite making eligibility requirements:

> First, the Defendant maintains that selecting certain options for the Plan, **such as requiring that its employees work for 30 days before reaching eligibility**, demonstrates StorageTrac's involvement as more than a mere advertiser. It is undisputed that in completing Jefferson Pilot's application, **StorageTrac was required to identify the number of its eligible employees, the minimum number of hours for an employee to be eligible for insurance, the waiting period before current employees were eligible, and the waiting period for new employees**. In addition, StorageTrac also selected the elimination period, the benefit duration and the benefit percentage of monthly earnings. The Defendant argues that "[ ]these things demonstrate the thought and effort put into the formulation of the Plan by StorageTrac" and clearly show that StorageTrac was more than an advertiser. The Court disagrees. The fact that StorageTrac selected certain options from a list dictated by Jefferson Pilot when completing its application does not amount to an endorsement of the Plan. When an employer performs such activities as maintaining a list of eligible employees, selecting the specific benefit to be made available to its employees, selecting the specific elimination period to be made available to its employees, it is not deemed as endorsing the Plan. *Zavora,* 145 F.3d at 1121. **Instead, it is performing the type of ministerial administrative duties that courts have held not to satisfy endorsement.** *See, e.g., Schwartz,* 280 F. Supp. 2d at 943–44.

Relying on a conclusory contract without identifying the actual tasks that Meritor purportedly undertook, MetLife has failed to establish that the safe harbor does not apply. The Court should remand this case to state court.

## CONCLUSION

For the reasons stated herein, Bowman respectfully requests this Court to grant his Motion to Remand and to enter an Order remanding this case to the Circuit Court of Harrison County, Mississippi, Second Judicial District for further proceedings.

This the 6th day of July, 2021.

                                Respectfully Submitted,

                                */s/ E. Taylor Polk*
                                E. Taylor Polk
                                *Counsel for Plaintiff*

OF COUNSEL:
Michael A. Heilman (MSB No. 2223)
John W. Nisbett (MSB No. 103120)
E. Taylor Polk (MSB No. 103653)
Heilman Law Group, P.A.
Meadowbrook Office Park
4266 I-55 North, Suite 106
Jackson, Mississippi 39211
Telephone: (601) 914-1025
Facsimile:  (601) 944-2915
mheilman@heilmanlawgroup.com
jnisbett@heilmanlawgroup.com
tpolk@heilmanlawgroup.com

## **CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent notification to all counsel of record.

This the 6th day of July, 2021.

                                */s/ E. Taylor Polk*
                                 E. Taylor Polk